**SLIP OP. 09-37**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| GLOBE METALLURGICAL, INC., | |
| Plaintiff, | |
| v. | Before: Jane A. Restani, Chief Judge |
| UNITED STATES, | Consol. Court No. 07-00386 |
| Defendant, | **Public Version** |
| and | |
| DATONG JINNENG INDUSTRIAL SILICON CO., INC., JIANGXI GANGYUAN SILICON INDUSTRY COMPANY, LTD., and SHANGHAI JINNENG INTERNATIONAL TRADE CO., LTD., | |
| Defendant-Intervenors. | |

**OPINION**

[Commerce's remand determination sustained.]

Dated: May 5, 2009

DLA Piper US LLP (William D. Kramer, Clifford E. Stevens, Jr., Jack A. Levy, Martin Schaefermeier, and Arlette Grabczynska) for the plaintiff.

Michael F. Hertz, Deputy Assistant Attorney General; Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Loren M. Preheim); Aaron P. Kleiner, Brian R. Soiset, Jonathan M. Zielinski, and William J. Kovatch, Jr., Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

Mayer Brown LLP (Duane W. Layton, Kristy L. Balsanek, and Sydney H. Mintzer) for the defendant-intervenors.

Restani, Chief Judge: Plaintiff Globe Metallurgical, Inc. ("Globe") and defendant-intervenors Datong Jinneng Industrial Silicon Co., Inc., Jiangxi Gangyuan Silicon Industry Company, Ltd., and Shanghai Jinneng International Trade Co., Ltd. ("Defendant-Intervenors") challenged the results of new shipper reviews of an antidumping duty order on silicon metal from the People's Republic of China ("PRC"). Following initial briefing and oral argument, the court granted, in part, Globe's motion for judgment on the agency record, denied defendant-intervenors' motion for judgment on the agency record, and remanded for the Department of Commerce ("Commerce") to calculate the normal value of silica fume based on information that relates more specifically to the by-product silica fume. <u>Globe Metallurgical, Inc. v. United States</u>, Slip Op. 08-105, 2008 WL 4417187, at *7 (CIT Oct. 1, 2008). On remand, Commerce valued silica fume using an average unit value ("AUV") based on World Trade Atlas ("WTA") Indian import data for the basket tariff subheading for silicon dioxide, excluding from its calculation countries that were not producers of silicon metal or ferrosilicon and countries identified as nonmarket economies. Following remand, Globe asserts that Commerce's valuation is unsupported by substantial evidence and contrary to law because the silicon dioxide import AUV is not product-specific and includes large volumes of imports that are not silica fume, which significantly distorts the AUV calculation for silica fume and understates the dumping margins calculated. The court finds that Commerce's selection of a narrower subset of the WTA Indian import data for silicon dioxide to calculate the normal value of silica fume is supported by substantial evidence and in accordance with law.

## BACKGROUND

Commerce initiated new shipper reviews of Defendant-Intervenors for the June 1,

2005, through May 31, 2006, period of review ("POR") of the <u>Antidumping Duty Order: Silicon Metal From the People's Republic of China</u>, 56 Fed. Reg. 26,649 (June 10, 1991). <u>See</u> <u>Silicon Metal From the People's Republic of China: Initiation of Antidumping Duty New Shipper Reviews</u>, 71 Fed. Reg. 42,084, 42,085 (July 25, 2006). In October 2007, Commerce published the final results of the new shipper reviews. <u>See</u> <u>Silicon Metal from the People's Republic of China: Notice of Final Results of 2005/2006 New Shipper Reviews</u>, 72 Fed. Reg. 58,641 (Oct. 16, 2007) ("<u>Final Results</u>"). Commerce considered the PRC a nonmarket economy country for the purpose of these reviews and selected India as its surrogate country for valuing the factors of production for Chinese silicon metal. <u>See</u> <u>Issues and Decision Memorandum for the Final Results of 2004/2006 Antidumping Duty New Shipper Reviews of Silicon Metal from the People's Republic of China</u>, A-570-806, POR 6/01/05-5/31/06, at 5, 8–9 (Oct. 9, 2007), <u>available at</u> http://ia.ita.doc.gov/frn/summary/PRC/E7-20344-1.pdf ("<u>Issues and Decision Memorandum</u>").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court will uphold Commerce's final determination in an antidumping investigation unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Commerce is required to use the "best available information" when valuing the factors of production, based on publicly available information from a market economy of comparable economic development. 19 U.S.C. § 1677b(c)(1); 19 C.F.R. § 351.408. Commerce

has "broad discretion" in this valuation process, Timken Co. v. United States, 166 F. Supp. 2d 608, 616 (CIT 2001), and the court will uphold Commerce's determination "if it is reasonable and supported by the record," Nippon Steel Corp. v. United States, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (internal quotation marks and citation omitted).

Silica fume is a by-product created during the production of silicon metal and ferrosilicon, and the value of silica fume is subtracted from the production cost of silicon metal when calculating silicon metal's normal value. See Issues and Decision Memorandum at 20. Because silica fume does not have a specific subheading under the Indian Harmonized Tariff Schedule, Commerce calculated an AUV for silica fume imports into India using WTA Indian import data covered by the basket tariff subheading for all forms of silicon dioxide. See id. at 20–21, 25. The resulting AUV was approximately $1700 per metric ton ("MT"). Id. at 21. Commerce relied on the WTA data, asserting that it could not determine whether the Infodrive India data submitted by Globe included "a significant percentage of the WTA data," but acknowledged that the WTA data "may [have] include[d] higher-valued products." Id. at 25.

The court held that valuing silica fume using the basket category AUV "captures too many products that are not the by-product silica fume," and that "the best available information is data that better relates to the specific by-product silica fume." Globe, 2008 WL 4417187, at *7. Thus, the matter was remanded to Commerce "in order for it to obtain better information for valuing silica fume or to use information on the record that relates specifically to the by-product silica fume." Id.

On remand, Commerce allowed interested parties the opportunity to submit new information and initiated "its own extensive search" of surrogate value information to use in

valuing silica fume.  See Final Results of Redetermination Pursuant to Court Remand for Globe Metallurgical, Inc. v. United States at 2–3 (Feb. 2, 2009) (Docket No. 110) ("Remand Results").  Commerce was "unable to find alternative, reliable sources," and instead, adjusted the WTA Indian import data for silicon dioxide to include only data from countries identified as producers of silicon metal or ferrosilicon by the U.S. Geological Survey ("USGS") 2005 Mineral Yearbook for Ferroalloys.  Id. at 3.  Commerce also excluded countries that it had determined to be nonmarket economies.  Id.  Thus, based on these adjustments, Commerce's revised AUV of approximately $778 per MT[1] for silica fume was based on WTA Indian import data from thirteen countries identified by the USGS as producers of silicon metal or ferrosilicon, compared to the original AUV of approximately $1700 per MT in the Final Results based on WTA Indian import data from twenty-five countries.[2]  Id.

       Globe contends that a surrogate value for silica fume based on even the adjusted AUV fails to comply with the court's requirement of "product-specific data" because it captures too many high-end products that distort the AUV calculation.  (Pl.'s Comments on Redetermination on Remand Issued by Dept. of Commerce ("Pl.'s Remand Comments") 2.)  Globe contends that in choosing the relevant import data to include in the AUV, Commerce

---

[1] Commerce lists an AUV of $778 per MT for Datong Jinneng Industrial Silicon Co., Inc. and Shanghai Jinneng International Trade Co., Ltd. and an AUV of $774 for Jiangxi Gangyuan Silicon Industry Company, Ltd.  (See Remand App. to Defendant-Intervenors' Comments on Final Results of Redetermination Pursuant to Court Remand Tabs B, C.)  The parties have not explained the reasoning for this slight discrepancy and obviously view this difference as immaterial.

[2] The thirteen countries relied on in the Remand Results are Brazil, Spain, Iran, Egypt, South Africa, Australia, Norway, France, Sweden, United States, Italy, Canada, and North Korea.  Id.

failed to consider additional information in the record, most significantly Infodrive India data, which Globe contends demonstrated that seven of the thirteen countries included in the adjusted AUV supplied significant amounts of products other than silica fume to India during the POR. (Id. at 4–5.) Globe maintains that only the silicon dioxide imports from the remaining six countries should be used to calculate an adjusted AUV of either $530 per MT using the further adjusted WTA import data or $470 per MT using the Infodrive import data, because the Infodrive data demonstrates that the imports underlying these values consisted almost entirely of silica fume. (Id. at 9–10.) Globe also contends that the average sales prices of refractory-grade silica fume in India during the POR by Norchem Inc., a U.S. producer and exporter of silica fume into India, indicate that the adjusted AUV calculated by Commerce is significantly distorted.[3] (Id. at 10–11.)

In selecting surrogate values for use in nonmarket economy proceedings, Commerce understandably prefers to use prices that are publicly available, broad market averages, contemporaneous with the POR, specific to the input in question, and exclusive of taxes. Import Administration Policy Bulletin 04.1: Non-Market Economy Surrogate Country Selection Process at *4 (March 1, 2004), available at http://ia.ita.doc.gov/policy/bull04-1.html.

---

[3] Norchem's average price for silica fume sold to India during the POR was $[[   ]] per MT for bagged, densified refractory-grade silica fume and $[[   ]] per MT for bagged, undensified refractory-grade silica fume. (Id. at 11.) This partially corroborates either of the two adjusted WTA figures now proposed by Commerce and Globe.
    Globe also argues that Commerce erred in not including Germany as a country that produced silicon metal during the POR, but maintains that if Germany had been included, this would have further distorted the AUV for silica fume because only a small portion of the silicon dioxide imports into India during the POR from Germany were silica fume. (Id. at 15–18.) The court finds this argument to be contradictory, and it is also based on problematic Infodrive India import data.

Commerce acknowledged that in this case it "continue[d] to be left with imperfect options" but concluded that its use of the adjusted WTA data it chose for valuing silica fume "relates more specifically to silica fume than the unadjusted WTA data." Remand Results at 5–6. That is no doubt true, but the essential issue raised by Globe is whether Infodrive India data should be used either to further adjust the WTA data or as a substitute for the WTA data.

Commerce has repeatedly expressed concerns over Infodrive's reliability, given the "significant and . . . unresolved discrepancies between the [WTA data and Infodrive data] that render the Infodrive data unusable."[4] Id. at 7. Information has not been provided detailing the specific relationship of Infodrive India data to the WTA Indian import data or what amount of the Infodrive data were subject to customs duties.[5] Infodrive data is based upon a variety of types of information and admittedly is not derived from data from all of India's ports. Commerce has stated that it will nonetheless "consider[] Infodrive data when further evaluating import data, provided the following conditions are met: 1) there is direct and substantial evidence from Infodrive reflecting the imports from a particular country; 2) a significant portion

---

[4] Commerce noted that

> while the WTA Indian import data for silicon dioxide during the POR contains a total of 8,287 MT of silicon dioxide, the Infodrive India data contains 17,864 MT, . . . [and] 80% of the Infodrive India entries by volume are identified as not subject to customs duties. If we accept that such entries should be excluded, the total Infodrive India volume drops to just 3,409 MT, which is less than half the official WTA Indian import volume.

Issues and Decision Memorandum at 25.

[5] Imports subject to duties are likely for consumption in India, the surrogate country.

of the overall imports under the relevant HTS category is represented by the Infodrive India data; and 3) distortions of the AUV in question can be demonstrated by the Infodrive data." <u>Antidumping Duty Investigation of Lightweight Thermal Paper from the People's Republic of China: Issues and Decision Memorandum</u>, A-570-920, POR 1/01/07-6/30/07, at 34 (Oct. 2, 2008), <u>available at</u>  http://ia.ita.doc.gov/frn/summary/PRC/E8-23284-1.pdf.  Here, Commerce has been "unable to determine what percentage of the total import data is captured by the Infodrive data."  <u>Remand Results</u> at 8.  Under these facts the court cannot say Commerce must use the Infodrive data for any purpose.

        The new value selected by Commerce is well within the range of silica fume prices in India.  It is impossible to say if the better value is $530 per MT or $778 per MT or some other value.  Given that "there is no single surrogate value option offered by any interested party that guarantees a perfect match with the silica fume sold by [Defendant-Intervenors]," <u>id.</u> at 9, the WTA data selected by Commerce, which comes from official Indian import statistics supplied by the Indian government, constituted suitable information for Commerce to use here. Unlike the prior value of $1700 per MT, the $778 per MT value is adequately supported on this record by the adjusted WTA data and other corroborating information.  Accordingly, Commerce's new choice of a value for silica fume was based on data that better relates to the specific by-product silica fume as required by the court's remand and was supported by substantial evidence.

## CONCLUSION

The results of the remand determination are sustained in their entirety.

                                                          /s/ Jane A. Restani
                                                            Jane A. Restani
                                                            Chief Judge

Dated:  This 5th day of May, 2009.
         New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| GLOBE METALLURGICAL, INC., : <br> : <br> Plaintiff, : <br> v. : <br> : <br> UNITED STATES, : <br> : <br> Defendant, : <br> : <br> and : <br> : <br> DATONG JINNENG INDUSTRIAL : <br> SILICON CO., INC., JIANGXI : <br> GANGYUAN SILICON INDUSTRY : <br> COMPANY, LTD., and SHANGHAI : <br> JINNENG INTERNATIONAL TRADE : <br> CO., LTD., : <br> : <br> Defendant-Intervenors. : | Before: Jane A. Restani, Chief Judge <br><br> Consol. Court No. 07-00386 |

**JUDGMENT**

This case having been submitted for decision and the court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED that the Remand Determination of the Department of Commerce is sustained.

   /s/ Jane A. Restani
      Jane A. Restani
      Chief Judge

Dated: This 5th day of May, 2009.
      New York, New York.

## NOTICE OF ENTRY AND SERVICE

    This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

    Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

                                                          or

    Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

                                                Tina Potuto Kimble
                                                Clerk of the Court

Date: _____        By: _____
                                                                               Deputy Clerk